***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin, and the briefs and arguments of the parties. The parties have not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Griffin, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. On December 14, 2008, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer. The Charter Oak Fire Insurance Company was the workers' compensation carrier on the risk, and St. Paul Travelers Insurance Company was the third-party administrator.
3. On December 14, 2008, plaintiff alleges that she sustained compensable injuries to multiple body parts due to an accident arising out of and in the course of her employment with defendant-employer. Defendants accepted the compensability of plaintiff's December 14, 2008 injury by accident to her right leg and vagina.
4. Defendants paid temporary total disability compensation at the rate of $125.35 per week from December 15, 2008 to March 23, 2009. Defendants paid plaintiff temporary total disability compensation at the rate of $108.63 per week from March 24, 2009 to April 20, 2009.
5. Plaintiff returned to work on or about April 19, 2009.
6. The parties have not stipulated to plaintiff's average weekly wage and resulting compensation rate. Defendants contend the average weekly wage should be calculated based on the wages plaintiff earned while employed part-time, from September 1, 2008 to December 14, 2008. Plaintiff contends her average weekly wage should be calculated based on the wages she earned during her entire period of employment with defendant-employer, from April 19, 2008 to December 14, 2008.
7. Defendants have paid for all of plaintiff's medical treatment.
 ***********
The following were submitted as:
 EXHIBITS *Page 3 
1. Stipulated Exhibit Number 1, Pre-Trial Agreement.
2. Stipulated Exhibit Number 2, Industrial Commission Forms, Medical Records, Payroll Records, Discovery Responses, Employment Documents.
3. Plaintiff's Exhibit Number 1, Photographs of Plaintiff's Right Thigh Scarring.
4. Plaintiff's Exhibit Number 2, Photographs of Plaintiff's Genitalia Scarring.
5. Plaintiff's Exhibit Number 3, Photographs of Plaintiff's Genitalia Scarring.
 ***********
The following were received into evidence as:
 DEPOSITIONS
1. Oral deposition of Dr. Donald P. Hanna taken on April 12, 2010 with Defendants' Exhibit Number 1 attached to the deposition transcript.
2. Oral deposition of Dr. Katherine Barrett taken on April 13, 2010 with Plaintiff's Exhibit Number 1 attached to the deposition transcript.
 *********** ISSUES TO BE DETERMINED
1. Whether plaintiff is entitled to compensation for serious bodily disfigurement pursuant to N.C. Gen. Stat. § 97-31(22)?
2. Whether plaintiff is entitled to compensation for loss of use or permanent injury to important external or internal organs or part of the body pursuant to N.C. Gen. Stat. § 97-31(24)?
3. What is the proper method to calculate plaintiff's average weekly wage and resulting compensation rate? *Page 4 
4. Are defendants entitled to a credit for overpayment of temporary total disability benefits paid between December 15, 2008 and April 20, 2009?
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 21 years old. Plaintiff is a student at Wake Tech Community College where she is pursuing a two-year program in office assistance/management.
2. On or about April 19, 2008, plaintiff began working for defendant-employer as a camp counselor. Her job duties included grooming, clipping, feeding and playing with dogs, and other general supervision of and care for dogs. When she began her employment, plaintiff worked part-time while she was attending school. During her summer break, from July through August 2008, plaintiff worked full-time. She resumed her part-time schedule in September 2008. Plaintiff earned $7.50 per hour for her work.
3. On December 14, 2008, plaintiff was working for defendant-employer when she was bitten on the right inner thigh and genitalia when she attempted to separate two fighting dogs. Plaintiff was transported by Emergency Management Services to the emergency room at WakeMed. At the emergency room, plaintiff's most severe wounds on her thigh and genitalia were repaired with stitches. Plaintiff was advised to follow-up with her regular gynecologist. Defendants accepted the compensability of plaintiff's right leg and vaginal injuries via the filing of a Form 60. *Page 5 
4. On December 16, 2008, plaintiff presented to her regular gynecologist, Dr. Katherine Barrett, for further evaluation of her injuries. Dr. Barrett removed the sutures and prescribed pain medication and antibiotics.
5. Thereafter, plaintiff continued to treat with Dr. Barrett, who recommended physical therapy to improve plaintiff's pain and break up scar tissue. Plaintiff participated in therapy once a week for six weeks.
6. On January 24, 2009, plaintiff presented to Dr. Paul Mele at Rex Urgent Care in Cary with a chief complaint of right leg pain due to her compensable accident. Based on his examination, Dr. Mele referred plaintiff to a plastic surgeon for evaluation of cosmetic and pain/adhesion issues. Dr. Mele opined that plaintiff could return to full duty work.
7. On March 2, 2009, plaintiff presented to Dr. Donald Hanna, a plastic surgeon, for evaluation of her scars. Dr. Hanna's examination revealed multiple scars to plaintiff's right inner thigh and genitalia. Dr. Hanna released plaintiff to full-duty work and recommended that she massage the affected areas and return for a follow-up appointment. He noted that it would take approximately one year for plaintiff's scars to stabilize.
8. Following her injury by accident on December 14, 2008, plaintiff did not return to work for defendant-employer. On April 19, 2009, plaintiff began employment with Old Navy as an associate cashier and cash handler earning the same or greater wages as she was earning prior to her injury.
9. On November 19, 2009, plaintiff presented to Dr. Barrett's partner, Dr. Christin Richardson, for her annual examination. Following the examination, Dr. Richardson opined that plaintiff's numbness and discomfort should improve. *Page 6 
10. On December 7, 2009, plaintiff returned to Dr. Hanna. He noted that plaintiff had multiple scars involving her labia majora, and that some of her scars appeared to be well healed. However, he further noted that the scars were still red in appearance, which he anticipated could take more than a year to resolve. Plaintiff informed Dr. Hannah that her right thigh scar was painful with long periods of standing.
11. On January 8, 2010, Dr. Hanna prepared a letter recommending reconstructive surgery on plaintiff's right inner thigh area. The reconstructive surgery has been recommended to improve the pain and hypersensitivity of her right inner thigh.
12. Dr. Barrett diagnosed plaintiff with vaginismus, which makes it painful for plaintiff to use feminine hygiene products. Dr. Barrett explained that this condition is usually not permanent and will likely resolve with physical therapy designed to relax the specific muscles.
13. Dr. Barrett opined that, as a result of the dog bites and placement of the stitches, plaintiff sustained, "significant damage to the soft tissue beneath the clitoris, which is very innervated and has lots of blood supply." Internally, plaintiff has sustained permanent decreased sensitivity, which has led to sexual dysfunction. Dr. Barrett opined, and the Full Commission finds, that the dog bites and permanent scarring have caused plaintiff's sexual dysfunction.
14. Plaintiff has a visible, raised scar on the upper inner right thigh. The skin of the scar feels much softer and looser than the surrounding skin. The scar itches, and the itching cannot be relieved by scratching. The scar becomes painful after plaintiff walks or stands for long periods of time, and plaintiff finds running difficult due to increased pain and irritation of the scar. The inner seam of the legs of plaintiff's jeans and pants rubs and irritates the scar, and, therefore, plaintiff must wear looser fitting pants and jeans to avoid irritating the scar. *Page 7 
15. Plaintiff's labia majora and clitoris have permanent scarring as a result of the compensable dog bites. The scarring is raised and feels tight. Fitted pants or jeans irritate the scarring in this area as well.
16. Based upon the greater weight of the medical evidence, plaintiff has proven that she sustained permanent injury to her clitoris resulting from her compensable December 14, 2008 injury. In the discretion of the Full Commission, plaintiff is entitled to equitable compensation in the amount of $20,000.00 for permanent injury to her clitoris, an important internal body organ.
17. The Full Commission has viewed photographs of plaintiff's genital scars and considered her testimony concerning her pain and discomfort. As a result of her injury by accident, plaintiff has suffered serious and permanent bodily disfigurement to such an extent that it may reasonably be presumed to lessen her future earning capacity. Therefore, the Commission finds that plaintiff is entitled to $10,000.00 for her permanent scarring and bodily disfigurement of her labia majora.
18. The Full Commission finds that the reconstructive surgery for the right inner thigh recommended by Dr. Hanna is reasonably necessary to effect a cure, give relief or lessen plaintiff's period of disability. As plaintiff has not reached maximum medical improvement of the scarring on her right inner thigh, plaintiff is not entitled to an award for serious bodily disfigurement at this time.
19. Prior to her injury, plaintiff worked less than 52 weeks. She worked full-time and part-time with the employer as her school schedule permitted. The first two methods of calculating average weekly wages provided in N.C. Gen. Stat. § 97-2(5) are inapplicable because plaintiff was employed for less than one year before the date of injury including all periods of *Page 8 
employment. N.C. Gen. Stat. § 97-2(5). Based on the evidence of record, the Full Commission finds that the third method of calculating average weekly wages provided in N.C. Gen. Stat. § 97-2(5) is appropriate as it provides results that are fair and just to both parties. Plaintiff's average weekly wage is calculated by dividing her total earnings by the total number of weeks (or parts thereof) that she worked for defendant-employer. The calculation results in an average weekly wage of $241.28, yielding a compensation rate of $160.86.
20. Plaintiff is entitled to $696.11, which represents the total underpayment of temporary total disability benefits during the periods of December 15, 2008 through March 23, 2009 and March 24, 2009 through April 18, 2009.
21. Defendants are entitled to a credit in the amount of $31.04 for overpayment of temporary total disability benefits on April 19, 2009 and April 20, 2009, after plaintiff began employment with Old Navy on April 19, 2009.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of the permanent injury to her clitoris resulting in decreased sensitivity and sexual dysfunction, plaintiff is entitled to an equitable award under N.C. Gen. Stat. § 97-31(24).
2. As a result of the serious bodily disfigurement in the form of permanent scarring on her labia majora, plaintiff is entitled to an equitable award under N.C. Gen. Stat. § 97-31(22).
3. As a result of her compensable December 14, 2008 accident, plaintiff has received medical treatment and is entitled to receive further medical treatment, including but not limited *Page 9 
to the revision surgery recommended by Dr. Hanna, that would effect a cure, give relief or lessen her period of disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-25.
4. Prior to her injury, plaintiff worked less than 52 weeks. She worked full-time and part-time with the employer as her school schedule permitted. The first two methods of calculating average weekly wages provided in N.C. Gen. Stat. § 97-2(5) are inapplicable because plaintiff was employed for less than one year before the date of injury including all periods of employment. N.C. Gen. Stat. § 97-2(5). Based on the evidence of record, the third method of calculating average weekly wages provided in N.C. Gen. Stat. § 97-2(5) is appropriate as it provides results that are fair and just to both parties. Plaintiff's average weekly wage is calculated by dividing her total earnings by the total number of weeks (or parts thereof) that she worked for defendant-employer. The calculation results in an average weekly wage of $241.28, yielding a compensation rate of $160.86. Thus, plaintiff is entitled to a payment of $696.11, which represents the total underpayment of temporary total disability benefits paid during the periods of December 15, 2008 to March 23, 2009 and March 24, 2009 to April 18, 2009.
5. Defendants are entitled to a credit in the amount of $31.04 for overpayment of temporary total disability benefits on April 19, 2009 and April 20, 2009. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following: *Page 10 
 AWARD
1. Subject to a reasonable attorney's fee approved herein and in the discretion of the Full Commission, defendants shall pay to plaintiff, equitable compensation in the amount of $20,000.00 for permanent injury to her clitoris, an important internal body organ.
2. Subject to a reasonable attorney's fee approved herein and in the discretion of the undersigned, defendants shall pay to plaintiff equitable compensation in amount of $10,000.00 for serious bodily disfigurement for permanent scarring to her labia majora.
3. Subject to a reasonable attorney's fee approved herein, defendants shall pay plaintiff $696.11, which represents the temporary total disability benefits underpaid during the periods of December 15, 2008 through March 23, 2009 and March 24, 2009 through April 18, 2009.
4. Defendants are entitled to a credit in the amount of $31.04 for the overpayment to plaintiff of temporary total disability compensation.
5. Defendants shall pay the medical expenses incurred or to be incurred by plaintiff, including but not limited to the revision surgery recommended by Dr. Hanna, as a result of her compensable injury, when bills for the same have been submitted according to proper Industrial Commission procedure.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraphs 1, 2 and 3 of this Award is approved for plaintiff's counsel and shall be paid by defendants as follows: 25% of the accrued compensation due plaintiff shall be deducted from said compensation and shall be paid in one lump sum directly to plaintiff's counsel.
7. Defendants shall pay the costs.
This the 14th day of March, 2011. *Page 11 
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ DANNY LEE McDONALD COMMISSIONER *Page 1